**Kim REUTER, Plaintiff–Appellee,**

v.

**Bob SKIPPER, Defendant–Appellant.**

**No. 93–35140.**

United States Court of Appeals, Ninth Circuit.

Submitted July 15, 1993.*

Decided Aug. 27, 1993.

As Amended Oct. 7, 1993.

---

* The panel unanimously finds this case suitable for disposition without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

Steven J. Nemirow, Asst. County Counsel, Multnomah County, Portland, OR, for defendant-appellant.

Spencer M. Neal, Ginsburg & Neal, Portland, OR, for plaintiff-appellee.

Before: GOODWIN, FARRIS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The Sheriff of Multnomah County, Bob Skipper (hereinafter "the County"), appeals a preliminary injunction granted by the district court enjoining the County from firing Kim Reuter during the pendency of her action brought under 42 U.S.C. § 1983. Reuter worked for the County as a County Corrections Officer. She was fired because she violated a rule which prohibited cohabitation between a corrections officer and an ex-felon.

The County contends this case involves a labor dispute and the district court was precluded from issuing the preliminary injunction by the Norris–LaGuardia Act of 1932 ("Norris–LaGuardia"), 29 U.S.C. §§ 101–115 (1988). The merits of the injunction are not contested. We have jurisdiction under 29 U.S.C. § 110. We affirm the district court's grant of the preliminary injunction.

# I

## BACKGROUND

Pursuant to a collective bargaining agreement between the County and the Multnomah County Corrections Officers Association, the officers' union, the County promulgated work rules for corrections officers. One work rule prohibited certain relationships between corrections officers and ex-felons who had been imprisoned anytime in the preceding ten years. Reuter admits she violated this rule by cohabiting with an ex-felon on parole from state prison.

The County sought to discharge Reuter for violating the rule. It asserted that Reuter's relationship posed a security risk and also reflected unfavorably upon the Sheriff's Department. When Reuter was informed of the County's intention to discharge her, she filed this action under 42 U.S.C. § 1983 and sought a temporary restraining order and preliminary injunction to block her discharge. She contended that the County's work rule violated her right to associate in an intimate relationship under the First Amendment and her right to privacy under the Fourteenth Amendment.

The district court issued a temporary restraining order. After a hearing, the court issued a preliminary injunction preventing the County from firing Reuter pending the outcome of her section 1983 action. The County appeals.

# II

## DISCUSSION

■ Norris–LaGuardia prohibits any federal court from issuing an injunction in almost any "labor dispute." *See Camping Constr. Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1343–49 (9th Cir.1990) (discussing limited scenarios in which Norris–LaGuardia has been held not to bar injunctive relief), *cert. denied*, —— U.S. ——, 111 S.Ct. 1684, 114 L.Ed.2d 79 *and cert. denied*, —— U.S. ——, 111 S.Ct. 2260, 114 L.Ed.2d 713. If Norris–LaGuardia applies here, an injunction is improper under 29 U.S.C. § 104(a) ("No court of the United States shall have jurisdiction to issue any restraining order or ... injunction ... to prohibit any person or persons ... from: ... (a) Ceasing or refusing to perform any work or to remain in any relation of employment.").

Norris–LaGuardia applies only to "person[s] participating or interested in a labor dispute." 29 U.S.C. § 113(b); *see also id.* at §§ 104, 105 & 113(a). Norris–LaGuardia does not specify whether a "person" includes a county.

The issue we must decide is whether the Norris–LaGuardia Act applies in this case to preclude the preliminary injunction which the district court issued. The Act applies if Reuter's section 1983 action is a "labor dispute," the County is a "person" within the meaning of the Act, and Reuter's action is not excepted from the anti-injunction provisions of the Act.

### A. Labor Dispute

Section 110 of the Act provides:

Whenever any court of the United States shall issue or deny any temporary injunction in a case involving or growing out of a labor dispute, the court shall, upon the request of any party to the proceedings and on his filing the usual bond for costs, forthwith certify as in ordinary cases the record of the case to the court of appeals for its review. Upon the filing of such record in the court of appeals, the appeal shall be heard and the temporary injunctive order affirmed, modified or set aside expeditiously.

29 U.S.C. § 110.

A " 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c). The definition of "labor dispute" in Norris–LaGuardia is "extraordinarily broad." *See Camping Constr. Co.*, 915 F.2d at 1342–43. Here, Reuter is threatened with discharge for violating a work rule, which is a "term[ ] or

condition of employment." 29 U.S.C. § 113(c).

■ Reuter contends her dispute with the County presents a constitutional question rather than an employment question. She argues that because her action is founded upon an alleged constitutional violation under section 1983, her case is not a "labor dispute" within the meaning of Norris–LaGuardia. *See Bowman v. Township of Pennsauken,* 709 F.Supp. 1329, 1336 (D.N.J.1989) (holding that a section 1983 claim by police officers against the Township was not a labor dispute under Norris–LaGuardia).

We reject this argument. The rule Reuter violated is directly related to the terms and conditions of her employment with the County. The County's remedy for a violation of the rule is discharge. Under Norris–LaGuardia's "broad" definition, this is a labor dispute.

B. The County As a "Person"

Norris–LaGuardia applies only to *"person[s]* participating or interested in a labor dispute." 29 U.S.C. § 113(b) (emphasis added); *see also id.* at §§ 104, 105, & 113(a). Relying on *United States v. United Mine Workers of Am.,* 330 U.S. 258, 289, 67 S.Ct. 677, 693–94, 91 L.Ed. 884 (1947), Reuter argues that the County is not a "person" under Norris–LaGuardia. We disagree.

*Mine Workers* is inapposite. There, the Court reasoned that the general term, "person," used in Norris–LaGuardia could not be applied to a sovereign government without express words to that effect. *Id.* at 272, 67 S.Ct. at 686. The Court also examined the legislative history of Norris–LaGuardia and determined that Congress intended that the federal government would be exempt from its provisions. *Id.* at 275–76, 67 S.Ct. at 687–88.

■ The County is not a "sovereign," but rather a "body politic and corporate." *See* Or.Rev.Stat. § 203.010 (1991) ("Each county is a body politic and corporate"); *see also The Eureka,* 80 F.2d 303, 304 (9th Cir.1935) (describing Multnomah County as "a municipal corporation and body politic"); *Coos County v. Oregon,* 303 Or. 173, 734 P.2d

1348, 1352 (1987) ("Counties have existed in corporate form with the power to sue and be sued since before statehood."). Nothing in the legislative history of Norris–LaGuardia suggests that the statute was not intended to apply to a county.

We are mindful that some district courts have excluded municipalities and subdivisions of state government from Norris–LaGuardia's proscription against the issuance of injunctions, and have done so by relying on *Mine Workers. See Anderson v. Edwards,* 505 F.Supp. 1043, 1047 (S.D.Ala.1981) (extending *Mine Workers* in order to enjoin the City of Mobile from restricting the public speech of its firefighters); *Lake Michigan College Fed'n of Teachers v. Lake Michigan Community College,* 390 F.Supp. 103, 135 (W.D.Mich.1974), *rev'd on other grounds,* 518 F.2d 1091 (6th Cir.1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976) (extending *Mine Workers* in order to reinstate teachers who were fired without a hearing after going on strike).

These decisions are inconsistent with the definition of "person" adopted by the Supreme Court in 42 U.S.C. § 1983 cases. The Court has held that municipal corporations are "persons" subject to suit under section 1983. *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In contrast, sovereign states are not considered "persons" under section 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Additionally, the history of the Dictionary Act, 1 U.S.C. § 1 (1988), supports the County's contention that it is a "person" under Norris–LaGuardia. Only months before Congress enacted the Civil Rights Act of 1871, on which Reuter's section 1983 action is predicated, it adopted the Dictionary Act. *See Monell,* 436 U.S. at 688, 98 S.Ct. at 2034 (citing Act of Feb. 25, 1871, § 2, 16 Stat. 431). That Act provided that the word "person" would include "bodies politic and corporate," meaning municipal corporations such as the County. *Id.* The definition in use in 1871 was still in use in 1932, when Congress enacted Norris–LaGuardia. Congress amended the Dictionary Act in 1948 and

inserted a broader definition of "person," including "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. This amendment, although it omits "bodies politic and corporate" from the definition, does not indicate that Congress intended to exclude municipal corporations from coverage under Norris–LaGuardia. Indeed, the Supreme Court has held that the requirements of federal statutes are to be imposed on the states, as well as their subdivisions, unless the states or their subdivisions are specifically exempted from the Congressional mandate. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 552–53, 105 S.Ct. 1005, 1018–19, 83 L.Ed.2d 1016 (1985) (overruling *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)); *see also California v. Taylor*, 353 U.S. 553, 564–65, 77 S.Ct. 1037, 1043–44, 1 L.Ed.2d 1034 (1957) ("When Congress wished to exclude state employees [from federal labor laws], it expressly so provided. Its failure to do likewise in the Railway Labor Act indicates a purpose not to exclude state employees.").

We hold that the County is a "person" under Norris–LaGuardia.

## C. Reuter's Section 1983 Action Excepted From Norris–LaGuardia

■ Despite the broad anti-injunction language of Norris–LaGuardia, a narrow band of labor disputes exists in which it is appropriate for a federal court to issue a restraining order or an injunction. Reuter contends that injunctions issued in actions brought under 42 U.S.C. § 1983 are within this exception. We agree.

The exceptions to the literal strictures of Norris–LaGuardia are few. "Every such case we have discovered accommodates the [Norris–LaGuardia] Act either to a duty imposed by another statute, or to the strong federal policy favoring labor arbitration." *Camping Constr. Co.*, 915 F.2d at 1345 (citations omitted). "Exceptions to Norris–LaGuardia are limited by this principle." *Id.*

Reuter's section 1983 action falls into the limited category of statutes excepted from the anti-injunction provisions of Norris–LaGuardia. Section 1983 imposes a duty on a person acting under color of state law not to deprive another person "of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (1988). Section 1983 provides the injured person with the broadest possible array of remedies: "an action in law, suit in equity, or other proper proceeding for redress." *Id.*

It would be incongruous to read Norris–LaGuardia to preclude equitable relief as a remedy available to the injured party under section 1983 just because the parties are involved in a labor dispute. The central purpose of section 1983 is to provide compensatory relief to those deprived of their federal rights by governmental bodies. *Felder v. Casey*, 487 U.S. 131, 141, 108 S.Ct. 2302, 2308, 101 L.Ed.2d 123 (1987).

We hold that Norris–LaGuardia does not deny a plaintiff in a labor dispute, who has a meritorious constitutional claim under section 1983, any of her available remedies. *See Lake Michigan College*, 390 F.Supp. at 135 ("the court can find no evidence that Congress intended to apply the Fourteenth Amendment to the states in every situation except public employment disputes in which injunctive relief is appropriate."); *see also Anderson*, 505 F.Supp. at 1047 (same).

Our holding does not interfere with the purposes of Norris–LaGuardia. Norris–LaGuardia was intended to protect workers from federal court injunctions so as to allow them to exercise organized economic power. *See* 29 U.S.C. § 102; *Matter of Crowe & Assocs., Inc.*, 713 F.2d 211, 216 (6th Cir. 1983). If a constitutional right is violated in a labor dispute between a municipal government and its employee, the section 1983 claim will invariably be made by the employee. An injunction issued against the municipality in such circumstances does not interfere with the policy aims of Norris–LaGuardia.

The County does not challenge the merits of the preliminary injunction, only the district court's power to issue it. We conclude that when all of the requirements for equitable relief under section 1983 have been met, Norris–LaGuardia does not preclude the district court from issuing an injunction in a section 1983 action, even though the action involves a labor dispute between an employee and a municipality.

AFFIRMED.