**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SHAWN P. WILLIAMS,

Defendant-Appellant.

No. 02-1519

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 00-CR-348-B)**

---

Martha A. Paluch, Assistant United States Attorney (John W. Suthers, United States Attorney, with her on the brief), Denver, Colorado, for Plaintiff-Appellee.

Robert W. Pepin, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

---

Before **MURPHY, ANDERSON,** and **TYMKOVICH,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.   INTRODUCTION

On September 13, 2002, defendant-appellant Shawn P. Williams was convicted after a jury trial on seven counts of mailing threatening communications in violation of 18 U.S.C. § 876.  Williams was tried in the United States District Court for the District of Colorado.  Three letters evidencing other wrongful acts were admitted at trial over Williams' objection pursuant to Fed. R. Evid. 404(b) and Fed. R. Evid. 403.  The jury returned a guilty verdict on all counts.  Williams moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29.  The district court denied the motion and sentenced Williams to 78 months' imprisonment.

Williams appeals the district court's denial of his Rule 29 motion and the district court's admission of the three letters pursuant to Fed. R. Evid. 404(b). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** Williams' conviction.

## II.   BACKGROUND

While serving a ten-year sentence for attempted rape at the Maine Department of Corrections, Williams began to mail numerous threatening letters, at first warning United States officials about visions he had of unsolved and potential murder cases.  Williams continued his mailings when transferred to federal prison, and his subsequent letters included bomb and sexual mutilation

threats. United States Marshal James Werner was sent to interview Williams, who admitted to writing and sending the threatening letters after waiving his *Miranda* rights. In August 2000, Williams was indicted on seven counts of mailing threatening communications in violation of 18 U.S.C. § 876.

Prior to trial, Williams moved *in limine* to exclude letters which he argued were inadmissible under Fed. R. Evid. 404(b) and Fed. R. Evid. 403 because they contained uncharged threats to various individuals and entities. The motion was denied in part and three of the challenged documents[1] were admitted at trial over Williams' objection. The judge gave limiting instructions regarding the purposes for which the jury could consider the three letters.

---

[1]The three controverted documents which were admitted are:

(1) Government Exhibit 11: envelope addressed to "Clerk of Courts." The letter threatened to "have you beaten, raped, sodomized & killed—BITCH!" and to "have that faggot-ass U.S. Attorney, the courthouse & half of Denver, <u>CO.</u>, <u>blown</u> up & destroyed, <u>BITCH</u>!"

(2) Government Exhibit 14: envelope addressed to "Governor Bill Owens." The letter contained some white, crushed tylenol powder which Williams claimed was anthrax and stated "Welcome to your <u>Anthrax</u> – Death!" The letter was signed "Osama-Bin-Laden, A.K.A. Shawn P. Williams."

(3) Government Exhibit 17: envelope addressed to "Clerk of Courts." The letter threatened to rape, kidnap, and kill a particular secretary who worked for the courts.

The district court reasoned that these exhibits were probative of Williams' intent to instill fear, of identity, modus operandi, opportunity, motive, and "misuse and knowledge of the [prison] legal mail process." The district court concluded that the probative value of these exhibits outweighed their prejudicial effects.

At trial, Williams testified that he caused each of the letters underlying the seven counts of the indictment to be mailed and that he had labeled them as "legal mail." Williams further testified that he intended that the recipients take his threats seriously so that he could "get their attention." Werner testified that Williams told him that he intentionally "disguise[d]" the threatening letters as legal mail to avoid inspection by prison mail monitors.

Following closing arguments, the jury tendered a question inquiring whether the phrase "'addressed to a person' mean[t] the address on the envelope or the greeting in a letter" and whether the communications alleged in the indictment had to be addressed to an "individual name" as opposed to "an office." In response, the court issued a supplemental jury instruction ("supplemental instruction"), which stated that the addressee on the face of the envelope controls, that an agency of the federal government is not a "person" within the meaning of 18 U.S.C. § 876, and that an official of the federal government may be a "person" within the meaning of the statute, even if not identified by proper name. The government objected to this instruction. Williams moved for a judgment of acquittal, arguing that in light of the supplemental instruction, the jury could not

find him guilty of the crimes charged. The court took the motion under advisement and denied it after the jury returned guilty verdicts on all counts.[2]

## III. DISCUSSION

### A. Denial of Motion for Judgment of Acquittal

This court reviews the sufficiency of the evidence to support a conviction or the denial of a defendant's motion for judgment of acquittal *de novo*. *United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004). In doing so, we view the evidence in the light most favorable to the government and determine whether a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt. *Id.*

---

[2] The letters and envelopes underlying each count were introduced into evidence. Each letter contained threats. The addressees on the envelopes and salutations are as follows:

(1) Count One: envelope addressed to "U.S. Dist. Attorney Office's, c/o U.S. District Courts." Salutation: "Hey Asshole."

(2) Count two: envelope addressed to "U.S. Atty's Office's. c/o – U.S. District Courts." Salutation: "Hey, U.S. Attorney."

(3) Count three: envelope addressed to "Clerk of Courts. U.S. District Courts." Salutation: "Hey, Bitch."

(4) Count four: envelope addressed to "U.S. Attorney's Offices. c/o – U.S. District Courts." Salutation: "Dear U.S. Attorney."

(5) Count five: envelope addressed to "Clerk of Courts. U.S. District Courts." Salutation: "Dear Clerk."

(6) Count six: envelope addressed to "U.S. Attorney's Office's. c/o – U.S. District Courts." Salutation: "Hey Asshole, D.A."

(7) Count seven: envelope addressed to "U.S. Attorney's Offices. c/o – U.S. District Courts." Salutation: "Dear, U.S. Attorney."

5

Williams argues that the district court erred in denying his motion for judgment of acquittal because the government failed to prove that he mailed a threat "addressed to any other person" as that element of the charged crime was defined by the supplemental instruction. Williams contends that no rational jury could have found him guilty because the supplemental instruction directed the jury to consider the addressee on the envelope and stated that a government agency is not a person within the meaning of 18 U.S.C. § 876. Williams argues that because of the supplemental instruction, the jury's verdict cannot be justified on the basis of the letters' salutations or contents.

This court need not decide whether there was sufficient evidence to support Williams' convictions as constrained by the supplemental instruction because the doctrine of law of the case does not apply under the circumstances of this case. The law of the case is applied to hold the government to the burden of proving each element of a crime as set out in a jury instruction to which it failed to object, even if the unchallenged jury instruction goes beyond the criminal statute's requirements. *See United States v. Romero*, 136 F.3d 1268, 1272-73 (10th Cir. 1998). In cases to which the doctrine of law of the case applies, the evidence must conform to the unchallenged jury instructions to support a conviction. *Id.* at 1272. The doctrine of law of the case is an equitable remedy whose purpose is to prevent the government from arguing on appeal a position which it abandoned

6

below. *See United States v. Wells*, 519 U.S. 482, 487-88 (1997); *Romero*, 136 F.3d at 1272-73. In the case at bar, however, the government objected to the supplemental instruction. The supplemental instruction did not become law of this case because the rationale which drives the doctrine in this context, *i.e.*, holding the government to a charge to which it agreed, has no bearing when the government objects to the instruction in the district court. *See Romero*, 136 F.3d at 1272-73 (discussing precedents which repeatedly illustrate that jury instructions become law of the case when unchallenged); *see also* 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4478 (1981) (failure to object to a jury instruction makes the instruction the law of the case for purposes of measuring the sufficiency of the evidence). Thus, this court does not have to constrain its analysis of the sufficiency of the evidence by the supplemental instruction.[3]

In order to resolve the question whether Williams' conviction on each of the seven counts was supported by sufficient evidence, this court must first decide whether one can look at both the envelope and the salutation to determine whether

---

[3]Williams relies on a Ninth Circuit case for the proposition that this court must evaluate his sufficiency claim in light of the elements as set out in the supplemental instruction. *See United States v. Arteaga*, 117 F.3d 388, 397 (9th Cir. 1997). *Arteaga* does not support Williams' position, however, because in that case the government had *failed* to object to the erroneous jury instructions. *Id.* at 396-97. Our holding that the instruction at bar did not become law of the case because the government objected to it is not inconsistent with *Arteaga*.

the letter is "addressed to any other person" within the meaning of 18 U.S.C. § 876 (2000). This court must also decide whether a government official can be a "person" within the meaning of § 876.[4] Both are questions of first impression.

This court holds that one can look, at a minimum, to both the envelope and the salutation of a letter in determining whether the letter is "addressed to any other person" within the meaning of § 876. Plain meaning controls statutory interpretation. *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1267 (10th Cir. 2003). In ascertaining the plain meaning of a statute, this court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole. *Id.* The definition of "address" includes "to speak, write, or otherwise communicate directly to." Webster's Third New International Dictionary 24 (1993). The definition of "address" does not exclude the salutation of a letter. Furthermore, the phrase "addressed to any other person" cannot be read in isolation.[5] *See id.* Section 876 proscribes the mailing of a

---

[4]In November 2002, Congress amended § 876 to, in part, impose a greater term of imprisonment for letters addressed to "a United States judge, a Federal law enforcement officer, or an official . . . ." 18 U.S.C. § 876(c) and (d) (2002). United States Attorneys and their assistants are included in the definition of federal officials. *Id.*; 18 U.S.C. § 1114. This amendment makes it clear that government officials are persons within the meaning of the current version of § 876. This opinion, however, analyzes whether officials are persons within the meaning of § 876 as it was written in 2000, when Williams was charged.

[5]At the time Williams was charged in 2000, § 876 read, in relevant part: "[w]hoever . . . knowingly *causes to be delivered* by the Postal Service . . . any *communication*, with or without a name or designating mark subscribed thereto,

8

threatening *communication* which is "addressed to any other person."  18 U.S.C. § 876.  The word "communication" includes the contents of a letter.  *Cf. United States v. Bellrichard*, 62 F.3d 1046, 1049-50 (8th Cir. 1995) (treating a letter as a "communication" within the meaning of § 876); Webster's Third New International Dictionary 460 (definition of the word "communication" includes "a letter").  Thus, at a minimum, the envelope and the salutation of a letter can both be considered in determining whether a communication is "addressed to any other person" within the meaning of § 876.

Furthermore, this court holds that a government official is a person within the meaning of § 876.[6]  Section 876 is ambiguous with respect to who qualifies as a "person" because it does not define the word "person."  18 U.S.C. § 876.  As a consequence, this court turns to congressional intent and to the purpose of the statute in interpreting the word "person."  *In re Geneva Steel Co.*, 281 F.3d 1173,

---

*addressed to any other person* and containing any threat to . . . injure *the person of the addressee or of another*, shall be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 876 (2000) (emphasis added).

[6]Other circuits have affirmed convictions for mailing threatening communications that were either addressed to, or threatened, government officials.  *See United States v. Blankenship*, 870 F.2d 326, 327 (6th Cir. 1988) (affirming a conviction under § 876 for sending an envelope addressed to "The Judge," which contained threatening letters); *United States v. Lincoln*, 589 F.2d 379, 380-81 (8th Cir. 1979) (affirming a conviction under § 876 for mailing, to the "Clerk of the U.S. Court of Appeals," a letter threatening to kill the "judges" of the Eighth Circuit).  These decisions do not indicate that the scope of "person" under the statute was an issue.

1178 (10th Cir. 2002) (holding that when a statute's plain meaning is ambiguous, courts may seek guidance from legislative intent and statutory purpose). The primary purpose of § 876, as evinced by the statute's plain meaning, is to proscribe the use of the United States Postal Service to mail to a person a threat to injure that person or another person. 18 U.S.C. § 876. This purpose would be frustrated by an interpretation of the word "person" which excludes government officials. Were this court to adopt such a narrow interpretation, one could avoid prosecution under § 876 merely by using a person's official title as opposed to her proper name in addressing a threatening letter. We decline to adopt a construction of the statute that could produce such an anomalous result.

An interpretation of the word "person" which includes government officials is consistent with another purpose of § 876. As the Seventh Circuit has noted, at least one of the purposes of § 876 is "the preservation of the recipient's sense of personal safety." *United States v. Aman*, 31 F.3d 550, 555 (7th Cir. 1994). This purpose informs us that the "person" to whom the communication is addressed, or who is threatened by the communication, must be capable of having a sense of personal safety. A government official, being a natural person, has such a sense of personal safety that can be threatened by the proscribed communication. This court therefore holds that a government official is a "person" within the meaning of § 876 because communications addressed to a specific government official are

10

clearly targeted at the natural person who holds that office at the time, regardless of whether the communication also mentions that individual's proper name.

Our holdings are consistent with the only three cases which have directly interpreted § 876's requirement that the threatening communication be "addressed to any other person." Consistent with our holding that both the envelope and the salutation are relevant in determining to whom a communication is addressed, a district court ruled that "a threatening letter is 'addressed' to a person within the meaning of § 876 if the letter itself is directed to the attention of a specific person, even though the delivery instructions direct that the mail carrier deliver the letter to an institution." *United States v. Chapman*, 440 F.Supp. 1269, 1270 (E.D. Wisconsin 1977). Moreover, in the unpublished disposition *United States v. Raymer*, the Ninth Circuit noted that "the context of 18 U.S.C. § 876 makes clear that 'person' means a natural person." 71 Fed. Appx. 669, 670 (9th Cir. July 28, 2003). In *United States v. Brownfield*, a district court held that a letter which is merely addressed to a federal agency is not addressed to a "person" within the meaning of the statute. 130 F.Supp.2d 1177, 1183-84 (C.D. Cal. 2001). The court in *Brownfield* reasoned that the letter must instead be addressed to a natural person. *Id.* Both *Raymer* and *Brownfield* are consistent with our holding that a communication addressed to a government official, who is a natural person, falls within the ambit of the conduct proscribed by § 876.

11

In light of the above principles, there was sufficient evidence to support Williams' conviction on each of the seven counts. Williams admitted on the witness stand to mailing each of the letters that underlie the seven counts of the indictment. Each of these seven letters contained threats to injure government officials. Furthermore, a reasonable jury could have found that each of the admitted communications was "addressed to any other person" within the meaning of § 876 because each communication was addressed to a government official. With respect to the communication underlying count one, the jury could have reasonably inferred that the salutation "Hey Asshole" was addressed to the U.S. Attorney, given that the envelope was addressed to "U.S. Dist. Attorney Office's." The salutation of the letter relating to count two expressly addresses the "U.S. Attorney." The envelopes of the communications underlying counts three and five were addressed to the "Clerk of Courts." The salutation of the letter concerning count four expressly addressed the "U.S. Attorney." The jury could have reasonably inferred that the salutation of the letter underlying count six, "Hey Asshole, D.A.," addressed the United States Attorney in Colorado, who is a government official. Lastly, the salutation of the letter underlying count seven expressly addressed the "U.S. Attorney."

In light of these threatening communications addressed to government officials and of Williams' admission to mailing them, there was sufficient

12

evidence to support Williams' conviction on each of the seven counts. Thus, the district court did not err in denying Williams' motion for judgment of acquittal.

## B.    Admission of Evidence of Uncharged Threats

This court reviews a district court's decision to admit evidence for an abuse of discretion. *United States v. Kravchuk*, 335 F.3d 1147, 1156 (10th Cir. 2003). "Under Rule 404(b), evidence of prior bad acts may be admitted for 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Id.*

Williams argues that the district court erred in admitting Government Exhibits 11, 14, and 17, and that the error was not harmless. This court need not rule on the admissibility of these letters because it holds that, even if the letters were erroneously admitted at trial, the error was harmless. A conviction will be affirmed if the error was harmless in light of the record as a whole. *United States v. Bornfield*, 145 F.3d 1123, 1131 (10th Cir. 1998). An erroneous admission of evidence is harmless unless it had a substantial influence on the outcome or it leaves one in grave doubt as to whether it had such an effect. *Id.*

Any error in admitting the challenged evidence was harmless because the evidence of Williams' guilt was overwhelming. *United States v. Oberle*, 136 F.3d 1414, 1418-19 (10th Cir. 1998); *United States v. Hardwell*, 80 F.3d 1471, 1490-91 (10th Cir. 1996) (admission of challenged Rule 404(b) evidence was harmless

error because evidence of the defendant's guilt was overwhelming). To convict a defendant for mailing threatening communications under § 876, the government must prove that the defendant authorized or knowingly caused the threatening material to be mailed. *See United States v. Davis*, 926 F.2d 969, 971 (10th Cir. 1991). Williams admitted on the stand that he caused the seven letters to be mailed. Werner testified that Williams told him that he used the legal mail system in order to avert detection by the prison mail monitors. As explained above, each letter contained threats to injure and was addressed to a government official. Under these circumstances, the jury had overwhelming evidence from which to find Williams guilty on each count of the indictment. Moreover, the district court instructed the jury that the challenged exhibits were admitted only for limited purposes. Therefore, any error in admitting the challenged evidence was harmless.

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** Williams' conviction on each of the seven counts.

14